# IN THE SUPREME COURT OF TENNESSEE

## AT NASHVILLE

STATE OF TENNESSEE, )
)
Appellant, )
)
Vs. )
)
EDDIE ARCARO WILLIAMS, )
)
Appellee. )

FOR PUBLICATION

**Filed:  January 2, 1996**

DAVIDSON CRIMINAL

HON. ANN LACY JOHNS, JUDGE

No.  01-S-01-9503-CR-00033

> **FILED**
> **December 4, 2000**
> **Cecil Crowson, Jr.**
> Appellate Court Clerk

**For Appellant:**

Charles W. Burson
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

Roger Moore
Assistant District Attorney General
Nashville, Tennessee

**For Appellee:**

Jeffrey A. DeVasher
Senior Assistant Public Defender

John Wiethe
Cynthia Burns
Assistant Public Defenders
Nashville, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS REVERSED;
JUDGMENT OF TRIAL COURT REINSTATED          ANDERSON, C.J.

We granted the State's appeal to consider whether the defendant's federal or state constitutional right of confrontation was violated by the admission into evidence of surveillance photographs taken at the scene of the robbery. The Court of Criminal Appeals decided that the defendant's constitutional right of confrontation was violated and that the evidence was insufficient as a matter of law to establish guilt beyond a reasonable doubt. As a result, they reversed the trial court's judgment of conviction.

We conclude that neither the state nor federal constitutional right to confrontation encompasses physical evidence. Accordingly, the defendant's constitutional right of confrontation was not violated by admission of the photographs into evidence. We have also determined the evidence is sufficient to establish guilt beyond a reasonable doubt. Accordingly, the Court of Criminal Appeals' judgment is reversed and the judgment of the trial court is reinstated.

## BACKGROUND

The defendant, Eddie Williams, was convicted in Davidson County of seven counts of robbery, one count of aggravated robbery, and one count of attempted robbery as a result of a string of robberies that occurred between May 23, and July 4, 1993. The robbery locations included the same Circle K convenience store on four separate occasions, two Super-X Drugs on two separate occasions, and two Eckerd Drugs on two occasions.

The facts relevant to the one robbery conviction dismissed by the Court of Criminal Appeals are as follows. On June 17, 1992, at around 3:20 a.m., Tom Powell, a clerk at the Circle K convenience store on Belmont Avenue in Nashville,

was sweeping the parking lot. As Powell returned to the check-out counter, he was approached by a man who asked for cigarettes and then demanded that Powell give him all the money. The robber told Powell that he had a gun, but Powell never actually saw a gun. Powell gave the robber all the cash in the cash register, approximately thirty dollars ($30). While removing the money from the cash register, Powell activated a videotape surveillance camera which took photographs of the robber during the course of the robbery.

About a month after the robbery, Powell viewed a pre-trial line-up which included Williams, but Powell did not identify Williams, or anyone else in the line-up, as the person who committed the robbery.

During the course of the trial of this case, Powell testified about the robbery, but was again unable to identify Williams as the person who committed the crime. The State, however, introduced fifteen still photographs taken by the videotape surveillance camera during the robbery, and when shown the photographs, Powell testified that they accurately depicted the scene inside the store at the time of the robbery. The photographs were then passed to the jury.

Ken Alexandrow, the Nashville police officer dispatched to the robbery, also testified at trial. Alexandrow said that when he arrived at the store, Powell was upset, but related the details of the robbery and said that the videotape surveillance camera had been activated during the robbery. Alexandrow also said that Powell described the robber as a black male, six feet tall, weighing about 150 pounds, with black hair and brown eyes.

On this evidence, a Davidson County Criminal Court jury convicted Williams of this robbery, as well as the eight other counts previously identified. The trial court imposed the maximum sentence on each conviction,[1] and ordered all sentences to be served consecutively, resulting in an effective sentence of one hundred and sixty-two (162) years.

Williams appealed. The Court of Criminal Appeals reversed and dismissed the one robbery conviction resulting from count five of the indictment, but affirmed the trial court judgment with respect to the remaining convictions and sentences, leaving intact an aggregate sentence of one hundred and forty-seven (147) years.

Explaining their rationale for reversal, the Court of Criminal Appeals said that "[t]he photographs, which are the only evidence against the appellant, do not contain an image that can be identified as the appellant beyond a reasonable doubt." Moreover, the Court of Criminal Appeals concluded that "[s]ince no witnesses identified the appellant and no other proof was introduced to connect the appellant with this robbery, . . . the jury's verdict of guilty was based upon their identification of the appellant as the perpetrator from the surveillance photographs. The jury thus became unsworn witnesses against appellant in direct violation of his right under the Sixth Amendment 'to be confronted with the witnesses against him.'"

Thereafter, we granted the State's application for permission to appeal, and for the reasons discussed below, now reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

---

[1] The trial court imposed a fifteen-year sentence for each robbery conviction, a thirty-year sentence for the aggravated robbery conviction, and a twelve-year sentence for the conviction of attempt to commit robbery.

## CONFRONTATION CLAUSE

The State argues that the Confrontation Clause of the state and federal constitutions are not implicated by introduction of the surveillance photographs into evidence in this case.

Resolution of this issue requires only an examination of the text of the constitutional provisions in question. The Sixth Amendment to the U.S. Constitution, which is applicable to the states through the Fourteenth Amendment,[2] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the <u>witnesses</u> against him." (Emphasis added.) The corresponding provision of the Tennessee Constitution provides "[t]hat in all criminal prosecutions, the accused hath the right . . . to meet the <u>witnesses</u> face to face." Tenn. Const. art. I, § 9 (emphasis added).

Although the language is not identical, both the federal and state constitutional confrontation provisions are restricted, by their own terms, to "witnesses" and do not encompass physical evidence or objects, such as photographs. <u>See</u> <u>Johnson v. State</u>, 715 S.W.2d 441, 443 (Ark. 1986); <u>Starkes v. United States</u>, 427 A.2d 437 (D.C. 1981); <u>Evans v. State</u>, 499 So.2d 781, 783 (Miss. 1986); <u>State v. T.L.W.</u>, 457 So.2d 566, 567 (Fla. Dist. Ct. App. 1984); <u>United States v. Restrepo</u>, 994 F.2d 173, 183 (5th Cir. 1993); <u>United States v. Herndon</u>, 536 F.2d 1027, 1029 (5th Cir. 1976).

Indeed, we have previously held that the confrontation clause provides two types of protection for criminal defendants: the right to physically face the witnesses who testify against the defendant, and the right to cross-examine witnesses. <u>State</u>

---

[2] <u>Pointer v. Texas</u>, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992); Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). Accordingly, we conclude that introduction of the surveillance photographs into evidence did not violate the defendant's federal or state constitutional right to confrontation.

## SUFFICIENCY OF THE EVIDENCE

We next consider whether the evidence is sufficient, as a matter of law, to support the jury's verdict on the robbery count in question. The State and the defendant agree that the photographs were properly authenticated and admitted as evidence relevant to the clerk's testimony that a robbery took place on the date and at the location charged in the indictment.

We also agree that the photographs were properly authenticated and admitted into evidence. Pursuant to Tenn. R. Evid. 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." One method of authentication exemplified by the Rule is testimony of a witness with knowledge "that a matter is what it is claimed to be." Tenn. R. Evid. 901(b)(1). In this case, the photographs were properly authenticated by that method, as the robbery victim, with personal knowledge of the robbery, testified that the surveillance camera was activated when the robbery began and that the photographs fairly and accurately portray the scene of the robbery. See United States v. Rembert, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (Discussing various methods of authentication in the context of interpreting the identical provisions of Fed. R. Evid. 901); see generally "Admissibility of Visual

Recording of Event or Matter Giving Rise to Litigation or Prosecution," 41 A.L.R. 4th 812 § 3 (1985 & 1995 Supp.).

The State argues that the identity of the person in the photographs was a question of fact for the jury, which decision should not be overturned on appeal unless no rational juror could have found the defendant guilty beyond a reasonable doubt. The defendant, however, argues that the jury could not have considered the photographs as proof of identity because the State offered no proof that the person in the photographs was the defendant.

We disagree and conclude that the jury appropriately could have considered the photographs as evidence of identity, despite the State's failure to present proof that the person in the photographs is the defendant. Photographs, such as those admitted in this case, have been described as recorded real evidence. Cohen, Paine & Sheppeard, Tennessee Law of Evidence, § 401.9, p. 83 (2d Ed. 1990). If properly authenticated, such recordings constitute real evidence from which a trier of fact is able to draw a first-hand sense impression of the facts, as opposed to evidence which serves merely to report to the trier of fact the secondhand sense impression of others. Id. at p. 82; see also Strong, 2 McCormick On Evidence, §212, p. 3 (4th Ed. 1992); Graham, Handbook of Federal Evidence, §401.2, p. 147-48 (3rd Ed. 1991).

Having determined that the photographs were properly authenticated, admitted, and probative of the issue of identity, the only remaining question is whether the evidence is legally sufficient to support the jury's finding of guilt. A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant

has the burden of demonstrating that the evidence is insufficient.  Id.  The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Where, as here, the sufficiency of the convicting evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Applying the required standard to the facts in this case, we conclude that the Court of Criminal Appeals erred in reversing the trial court's robbery conviction.  The clerk testified that a robbery occurred on the date and time alleged in the indictment, and that the surveillance photographs were accurate portrayals of the robbery in progress.  The defendant generally matched the description of the robber given by the clerk to the police officer dispatched to the scene of the robbery.  On the question of identity, the jurors had before them the photographs taken by the surveillance camera during the course of the robbery, from which they were able to draw a first-hand sense impression.  Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

## CONCLUSION

Because the defendant suffered no violation of his constitutional right to confront the witnesses against him, and because the evidence is sufficient as a matter of law to support the conviction of robbery, the judgment of the Court of

Criminal Appeals dismissing the conviction is reversed, and the judgment of the trial court is reinstated.  Costs of this appeal are taxed to the defendant, Eddie Williams, for which execution may issue if necessary.


_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Reid, Birch and White, JJ.