FILED
06/05/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2024 Session

## CHARLES THOMAS JOHNSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. 2017-CR-44      Forest A. Durard, Jr., Judge**

_____

### No. M2023-00049-CCA-R3-PC

_____

The petitioner, Charles Thomas Johnson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. Following a thorough review of the record, the briefs, and oral arguments of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Michael R. Meise, Dickson, Tennessee (on appeal), and Jefre Goldtrap, Assistant Public Defender, Fayetteville, Tennessee (at hearing), for the appellant, Charles Thomas Johnson.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The petitioner was convicted of possession of heroin with intent to sell and deliver and possession of 0.5 grams or more of cocaine with intent to sell and deliver and, after appropriate merger, the trial court imposed an effective sentence of twenty years' incarceration. *State v. Johnson*, 2020 WL 4557035, at *1 (Tenn. Crim. App. Aug. 7, 2020), *perm. app. denied* (Tenn. Dec. 2, 2020). The petitioner appealed, arguing that: (1) the evidence was insufficient to sustain his convictions, (2) the trial court erred in denying his

*Ferguson*[1] motion, and (3) the trial court erred in denying alternative sentencing and imposing consecutive sentencing. *Id.* This Court affirmed the judgments of the trial court, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.*

Our opinion on direct appeal reflects that the petitioner's convictions arose out of the traffic stop of the vehicle in which he was the passenger, during which approximately 55.60 grams of heroin and 26.17 grams of cocaine were discovered. *Id.* Officers with the Lincoln County Sheriff's Office received information from a Huntsville, Alabama, based drug task force that the petitioner and a female companion, Rachel Wallace, would be traveling back to Lincoln County where they resided and that a traffic stop should be conducted if circumstances warranted. *Id.* at *1-*2. Once officers spotted the anticipated vehicle in the area, they followed it until they observed the vehicle cross the center line twice and also "drift[] across" the center and fog lines. *Id.* at *1 and *3. The officers activated their blue lights to initiate a stop, and the vehicle pulled over about a quarter-mile down the road. *Id.*

The vehicle was driven by Ms. Wallace, and she and the petitioner claimed to be coming back from a wedding in Atlanta. *Id.* However, the officers noticed that both individuals were dressed in casual clothes and that there was no luggage or other clothing in the vehicle. *Id.* During the interaction, a police dog alerted to the odor of drugs, but no drugs were found inside the vehicle. *Id.* at *1. Ms. Wallace and the petitioner were separated for questioning, and Ms. Wallace informed the officers that the petitioner had handed her "two 'cookies' of heroin and one 'ball' of cocaine" to conceal in her vagina. *Id.* at *3-*5.

The petitioner ultimately admitted to the officers that he had met a person in Atlanta to purchase cocaine and heroin, as he had done on eight to ten other occasions, and that he had intended to sell the heroin. *Id.* at *3. The petitioner did not indicate his intent with the cocaine. *Id.* The petitioner acknowledged that he had possession of the drugs before the traffic stop and had handed them to Ms. Wallace to conceal once he realized they were being pulled over by the police. *Id.*

On November 17, 2021, the petitioner filed a pro se petition for post-conviction relief and appointed counsel subsequently filed an amended petition. Relevant to this appeal, the petitioner argued that trial counsel was ineffective for failing to challenge law enforcement's "illegal" use of a GPS device to track him. Also, fairly connected to an allegation on appeal, the petitioner argued that trial counsel was ineffective for failing to

---

[1] *State v. Ferguson,* 2 S.W.3d 912 (Tenn. 1999).

investigate and secure a video of his interrogation by police the morning after his arrest. The post-conviction court conducted an evidentiary hearing on November 1, 2022, at which trial counsel and the petitioner testified.

Trial counsel testified that in preparation of the case, he reviewed the discovery provided by the State and provided copies to the petitioner. Counsel stated he and the petitioner had an open line of communication and frequent discussions about the case. Counsel said he "never had any issues" communicating with the petitioner. Counsel investigated the traffic stop of the petitioner and filed motions related to the stop. One such motion was a motion to suppress, and counsel met with the petitioner several times to discuss counsel's thoughts related to that motion.

With regard to the petitioner's confession, counsel recalled there was a video of the petitioner being interviewed that counsel included in a motion to suppress. From counsel's recollection, the petitioner "appeared to be intoxicated or . . . coming off something," which counsel thought would be grounds for suppression. However, the trial court did not agree and denied the motion. Counsel said that he was "not sure what else [he] could have done regarding" the confession. When asked if he considered hiring an expert concerning how the petitioner's drug withdrawal affected his confession, counsel stated, "I don't know if that was a big part of the strategy I developed in this case."

Counsel said that, instead, his "trial strategy revolved around the possession aspect of where the drugs were found in the car and things of that nature." Counsel believed the question in the case was whether the petitioner had constructive possession of the drugs and aligned his strategy to dispute that theory. Counsel elaborated, "The trial strategy was obviously constructive possession, that he could not possess the drugs where they were found on the lady that was driving the car. If they were in her then he could not have possession[.]"

Trial counsel also filed a motion to dismiss and/or compel video evidence that incorporated a *Ferguson* motion. Counsel filed this motion because testimony at the petitioner's preliminary hearing had "some mention of some body cam and dash cam footage" that was not received in discovery. Counsel recalled that officers gave various explanations for the absence of the footage, including they did not know how to save it, "thought they saved it but they lost it," or "not knowing where it was." When counsel never received the footage from law enforcement, he filed a subsequent motion to dismiss.

Trial counsel remembered "there being a mention of a GPS device in the preliminary hearing" causing him to "look[] into it with the Lincoln County Sheriff's Department." However, after he received no information about a GPS device in discovery, he did not pursue the issue any further. Counsel thought he "did all [he] could" regarding the stop.

- 3 -

The petitioner testified that his confession was coerced because he was detoxing from a significant heroin habit and feeling very ill, but was denied medical attention. The petitioner said that the recording of his confession was not played for the jury, but it was mentioned to the jury that he had confessed. The petitioner stated that he and counsel never discussed whether an expert should be used to discuss how drug withdrawal would affect an individual's statements.

With regard to the GPS device on the car, the petitioner said that it was mentioned at the preliminary hearing with his attorney at the time, but he and trial counsel did not talk about it. The petitioner admitted, "I did not catch it until I was doing my post[-]conviction, my pro se post[-]conviction. That is when I found it during my pretrial transcripts." However, the petitioner reiterated, "I mean they used illegal evidence in my case. They had an illegal GPS in my case, you can't do that."

Following the conclusion of the proof, the post-conviction court entered a written order denying the petition. With regard to the petitioner's claim that trial counsel should have challenged the "illegal" GPS device on his vehicle, the post-conviction court observed that "[t]here really was not much introduced at the hearing regarding this topic." The court observed that counsel indicated that "he looked into the GPS tracking device that he claims was not received in discovery." The court noted that it "received no tracking order, what person requested the tracking order or other information to make an intelligent judgment call about this topic." With regard to the petitioner's argument that trial counsel should have introduced his taped confession at trial, the post-conviction court found the "allegation . . . a bit perplexing considering there was a motion to suppress the statement." However, the court observed that "perhaps, trial counsel did not wish to emphasize this damning evidence any more than necessary." The post-conviction court also explicitly found that "there was a mountain of evidence against the [p]etitioner" and "[n]one of the errors alleged demonstrate, singularly or in combination, [that the] [p]etitioner was prejudiced in any manner."

## *Analysis*

On appeal, the petitioner argues he received ineffective assistance of counsel because counsel failed to: (1) present expert testimony and the petitioner's confession tape to argue that the petitioner was "dope-sick" when he confessed; and (2) investigate and argue against the illegal use of a GPS tracking device. The State responds that the post-conviction court properly denied relief because the petitioner failed to prove that trial counsel performed deficiently or that any alleged deficiency caused him prejudice. We agree with the State.

- 4 -

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (first citing *Strickland*, 466 U.S. at 688; and then citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## I. Confession

The petitioner argues that he received ineffective assistance of counsel because trial counsel failed to present expert testimony and the tape of the petitioner's confession to argue the petitioner was "dope-sick" when he confessed. The petitioner asserts that "offering expert testimony and . . . having the jailhouse confession tape played to the jury . . . may have shown the jury that the [petitioner] was unaware of his statements." He avers that just because the trial court determined that he understood his rights and voluntarily confessed, "does not preclude the attorney from arguing his client's state of mind at that time."

Trial counsel's testimony at the evidentiary hearing shows that he sought suppression of the confession tape because it indicated that the petitioner was intoxicated or "coming off something," which counsel believed to be grounds for suppression. However, the trial court denied his motion, and trial counsel did not know "what else [he] could have done regarding that video[.]" Now, at this juncture, the petitioner claims that counsel should have played the confession tape for the jury, but the petitioner never testified at the evidentiary hearing that he asked counsel to play the tape at the trial. In ruling on this issue, the post-conviction court surmised that, "perhaps, trial counsel did not wish to emphasize this damning evidence any more than necessary." The petitioner has not shown that counsel's conduct fell outside the wide range of reasonable professional assistance with regard to seeking suppression of the confession tape and not playing it to the jury.

Along the same vein, the petitioner has not shown that it was deficient performance for counsel to not employ an expert to testify concerning how drug withdrawal could affect the petitioner's confession. When asked why he did not seek such an expert, counsel stated, "I don't know if that was a big part of the strategy I developed in this case." Instead, counsel's strategy involved arguing that the petitioner did not possess the drugs. As counsel explained, "The trial strategy was obviously constructive possession, that [the petitioner] could not possess the drugs where they were found on the lady that was driving the car. If they were in her then he could not have possession[.]" We will not second-guess counsel's reasonable trial strategy. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)

In any event, the petitioner has failed to prove prejudice. In his brief, the petitioner fails to allege, much less show, a reasonable probability that the result of the trial would have been different had counsel played the confession tape for the jury and presented relevant expert testimony. As such, the petitioner has not established prejudice. Even more, the petitioner has particularly failed to show any prejudice caused by counsel's failure to call an expert witness because he did not present such a witness at the evidentiary hearing. "To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d at 757). The petitioner has not met his burden and is not entitled to relief.

## II. GPS Tracking Device

The petitioner argues he received ineffective assistance of counsel because counsel failed to investigate and argue against the "illegal" use of a GPS tracking device. The petitioner asserts that counsel should have "vigorously pursued" the issue of "an illegally placed GPS tracking device by the government to monitor its citizen's movements for the sole purpose of securing a stop," and that his case would have been dismissed had counsel prevailed on the issue. Seemingly, the petitioner is claiming that counsel should have filed a motion to suppress evidence from the traffic stop based on officers' use of that GPS device.

In order to establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence, a petitioner "must prove: (1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Phillips v. State*, 647 S.W.3d 389, 404 (Tenn. 2022). The petitioner continues to bear the burden of proving the factual allegations supporting his or her claims by clear and convincing evidence. *Id.* (citing Tenn. Code Ann. § 40-30-110(f)). In order to prevail, the petitioner should "[i]n essence . . . incorporate a motion to suppress within the proof presented at the post-conviction hearing." *Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011).

Insofar as the petitioner asserts trial counsel was ineffective for failing to investigate and argue against the "illegal" use of a GPS tracking device, we conclude trial counsel's decision not to file a motion to suppress or raise any argument concerning the tracking

- 7 -

device was not deficient or prejudicial because the petitioner was not the owner of the vehicle and, therefore, lacked standing.

When the accused moves to suppress evidence based on a search, he bears the burden of establishing standing to challenge the search, or a reasonable expectation of privacy in the place or thing being searched. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (concluding that the driver of the vehicle had a reasonable expectation of privacy in the vehicle). In evaluating whether the accused has standing to contest a search, we examine: 1) ownership of the property; 2) whether the accused has a possessory interest in the item seized; 3) whether the accused has a possessory interest in the place searched; 4) whether the accused has a right to exclude others from that place; 5) whether the accused has demonstrated a subjective expectation that the place would remain free from governmental invasion; 6) whether the accused took normal precautions to maintain privacy; and 7) whether the accused was legitimately on the premises. *Id.* (citing *United States v. Haydel*, 649 F.2d 1152 (5th Cir. 1981)).

The petitioner was a passenger who had no ownership or possessory interest in the car, was not driving the car, asserted no possessory interest in the property seized, and presented no evidence of a subjective expectation of privacy in or ability to exclude individuals from the car. Therefore, the petitioner did not have standing to contest the use of the GPS device or the subsequent search of the vehicle. *See State v. Kelley*, No. M2011-02260-CCA-R3-CD, 2013 WL 5827646, at *6 (Tenn. Crim. App. Oct. 29, 2013) (concluding that the defendant lacked standing to contest the search of the trunk of a vehicle in which he was a mere passenger); *State v. Nash*, No. W2001-01703-CCA-R3-CD, 2002 WL 1905328, at *4 (Tenn. Crim. App. Aug. 14, 2002) (a passenger who had no possessory interest in the car and who presented no evidence of a subjective expectation of privacy could not challenge the search), *rev'd on other grounds by State v. Nash*, 104 S.W.3d 495 (Tenn. 2003); *State v. Perry*, No. E1999-00271-CCA-R3-CD, 2000 WL 1246577, at *5 (Tenn. Crim. App. Sept. 5, 2000) (concluding that a passenger with no ownership or possessory interest who presented no evidence of a subjective expectation of privacy did not have standing to challenge the search of the vehicle); *State v. McAdams*, 640 S.W.2d 49, 51 (Tenn. Crim. App. 1982) (the occupants of a vehicle had no standing to contest search when they did not assert any ownership of the vehicle or of the items seized and showed no reasonable expectation of privacy in the vehicle). Accordingly, any motion to suppress would not have resulted in the suppression at the petitioner's trial.

Even if we were to assume counsel's performance was deficient, the petitioner has failed to prove the deficiency caused him prejudice. The petitioner did not incorporate a motion to suppress within the proof at the post-conviction hearing. Aside from the petitioner's observation that the record does not contain a warrant for placement of the GPS device, the petitioner offered no proof that the Alabama drug task force officers placed the

device without one. Such evidence could have been presented at the post-conviction hearing to support the petitioner's claim that a motion to suppress would have been granted. In addition, in ruling on the motion to suppress that was filed, the trial court found that even if local officers' communication with out-of-state law enforcement provided pretext to stop the petitioner, the stop was legal because officers observed Ms. Wallace's vehicle commit traffic violations. Therefore, it follows that even if the officers were on the lookout for Ms. Wallace's vehicle due to information gained from the GPS device, the trial court would have determined that the stop of the vehicle was legal because of the observed traffic violations. The petitioner has failed to prove that a motion to suppress based on the officers' use of the GPS tracking device would have been granted. The petitioner has not met his burden and is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE